IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

ISAAC EGUABOR )
)
v. ) NO. 3:08-0248
)
CORRECTIONS OFFICER )
MICHAEL HUNTER )

TO: Honorable Todd J. Campbell, Chief District Judge

# REPORT AND RECOMMENDATION

By Order entered March 11, 2008 (Docket Entry No. 9), the Court referred this action to the Magistrate Judge, pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B), for decisions on all pretrial, nondispositive motions, to issue report and recommendations on all dispositive motions, and to conduct any necessary proceedings under Rule 72(b) of the Federal Rules of Civil Procedure, and the Local Rules of Court.

Presently pending before the Court are the defendant's second motion to dismiss (Docket Entry No. 37) and the defendant's motion for summary judgment (Docket Entry No. 43). The plaintiff has filed responses in opposition to the motions. See Docket Entry Nos. 40-41 and 50-52. Also before the Court is the defendant's reply (Docket Entry No. 55-57).

Set out below is the Court's recommendation for disposition of the motions.

## I. BACKGROUND[1]

On June 1, 2007, the plaintiff was an inmate confined at the Hill Detention Center[2] ("HDC") in Nashville, Tennessee and had returned to the HDC after being temporarily transferred from the HDC to make a court appearance in Rutherford County, Tennessee. Once he returned to C-pod, which was his housing unit, he confronted another inmate whom he believed had stolen a radio from his personal property while he was away. After finding the radio, the plaintiff cursed and yelled at the inmate, threatened to kill him, and threw a trash can across the floor of C-pod.

The plaintiff's disruptive behavior garnered the attention of two HDC correctional officers who came into C-pod and gave him verbal orders to calm down, exit C-pod, and go to another area known as the "quiet box" or the "stupid box." The plaintiff's response was to curse at the officers. The verbal orders were then repeated and the plaintiff cursed at the officers again while he began walking toward the door to exit C-pod. Although the plaintiff was admittedly angry, no physical contact had occurred between the plaintiff and the other inmate or between the plaintiff and the correctional officers.

The plaintiff then exited C-pod into the hallway leading to other areas of the HDC and may have offered a final verbal parting shot by yelling "I'll kill all you mother fuckers."[3] At some point

---

[1] The facts recounted in the background section are summarized from the entire record in this action and recount events which are essentially undisputed by the plaintiff in his deposition (Docket Entry No. 37-2).

[2] The plaintiff is no longer confined at the HDC and is currently confined at the Metro-Davidson County Detention Facility ("MDCDF").

[3] The plaintiff does not recall whether he said this or not, but he does not deny saying it. See Plaintiff's Deposition (Docket Entry No. 37-2), at 38. In contrast, he specifically denies that he said that he "would stab everyone" or that he called one of the correctional officers a "whore." Id. at 36 and 38.

2

during these events, correctional officer Michael Hunter entered C-pod to assist the other correctional officers. Immediately after entering the hallway, the plaintiff reached out with his arm and knocked a lunchbox off a correctional officer's work station/desk which was in the hallway. Within a few seconds, he was tackled from behind by Officer Hunter, brought to the floor of the hallway, and handcuffed. No other force was used against the plaintiff. However, Officer Hunter's act of tackling the plaintiff and bringing him to the floor caused the plaintiff's left femur to break.

The plaintiff was then ordered to stand up but he protested that he could not walk because of his leg and he was unable to stand. A supervising officer then arrived and instructed Officer Hunter and another officer to remove the plaintiff from the hallway and drag him to a holding cell approximately 50 feet away, which the two officers did. The plaintiff was then seen by HDC medical personnel and transported to a local hospital for treatment of his broken leg and a laceration to his lip.

The plaintiff subsequently filed this action pro se and in forma pauperis on January 11, 2008, alleging that his civil rights were violated because Correctional Officer Hunter used excessive force against him by tackling him in the hallway and breaking his leg and by dragging him to the holding cell after his leg was broken. By the Order entered March 11, 2008, process was issued on the claim against Defendant Hunter but claims against the Davidson County Sheriff's Office were dismissed. The defendant answered the complaint with a denial of wrongdoing, see Docket Entry No. 15, and a scheduling order (Docket Entry No. 19) was entered.

3

## II. SECOND MOTION TO DISMISS AND PLAINTIFF'S RESPONSE

The defendant moves under Rule 37 of the Federal Rules of Civil Procedure to dismiss the action because of the plaintiff's refusal to fully participate in his deposition.

After the plaintiff's original deposition could not be completed because the plaintiff refused to participate without counsel, the defendant moved to dismiss the action under Rule 37. See Docket Entry No. 24. By Order entered November 3, 2008 (Docket Entry No. 29), the Court construed the motion as a motion to compel, granted the motion, and ordered the plaintiff to permit his deposition to take place. The plaintiff was specifically warned that his failure to participate in the deposition or failure to answer questions would result in a recommendation that the action be dismissed. See Docket Entry No. 29, at 2.

The defendant asserts that the plaintiff's second deposition was properly noticed and scheduled for November 11, 2008, but that, although the plaintiff participated in the deposition, he refused to answer questions at the deposition concerning the identities of two witnesses whom he asserts saw the events at issue. See Deposition (Docket Entry No. 37-2), at 80-83.[4] The defendant maintains that the information requested is material to the claim against him and that he cannot properly prepare for trial without knowing the identity of the witnesses. The defendant argues that, in light of the Court's specific directives in the Order entered November 3, 2008, the plaintiff's willful failure to fully answer legitimate questions warrants the sanction of dismissal.

---

[4] The defendant contends that the plaintiff also refused to answer questions about his criminal history and his medical records. However, the defendant concedes that he was not prejudiced by the plaintiff's refusal because the information is obtainable from other sources. See Defendant's Motion (Docket Entry No. 37), at 3 n.2.

4

In response, the plaintiff asserts that he suffers from mental illness and that the defendant's attorney tried to confuse and/or manipulate him at the deposition. See Docket Entry No. 40, at 1. He further contends that he did not refuse to answer questions at his second deposition but was merely "being uncooperative" and was uncomfortable answering questions about his criminal history and was unwilling to provide names of witnesses whom he had not yet contacted about testifying on his behalf. Id. See also Plaintiff's letter, dated December 12, 2008 (Docket Entry No. 41).

### III. MOTION FOR SUMMARY JUDGMENT

The sole basis for summary judgment asserted by the defendant is that he is entitled to qualified immunity. Relying on his own affidavit (Docket Entry No. 44), the affidavit of Pamela Hale (Docket Entry No. 45), and the plaintiff's deposition (Docket Entry No. 37-2), the defendant asserts that the undisputed facts show that the plaintiff was acting disruptively and violently by cursing and throwing a trash can, was threatening another inmate and correctional officers, and was disobeying orders on the day in question. The defendant argues that use of physical force against the plaintiff was necessary to restore order and control the plaintiff. The defendant contends that the plaintiff's leg was accidentally broken and there is no evidence supporting a claim that the defendant acted maliciously or sadistically toward the plaintiff. The defendant also asserts that the plaintiff admitted at his deposition that the defendant did not order that the plaintiff be dragged into a holding cell.

Based upon these facts, the defendant argues that he is entitled to qualified immunity because he did not take any actions which violated the plaintiff's constitutional right to be free from the use of excessive force. The defendant argues that the plaintiff's conduct necessitated that correctional officers gain control of him and that the use of physical force against the plaintiff was necessary and reasonable under the circumstances since the force was applied in a good faith effort to restore discipline.

In response, the plaintiff disputes the accuracy of the version of the events set forth the by the defendant and contends that factual disputes exist. He contends that he was walking to the holding cell when he was tackled by Defendant Hunter and that the broken leg he suffered evidences the fact that excessive force was used against him.

## IV. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rule of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." In order to prevail on a motion for summary judgment, the moving party must demonstrate that no genuine issue of material fact exists and that judgment as a matter of law should be granted in the moving party's favor. Smith v. Hudson, 600 F.2d 60, 63 (6th Cir. 1979).

The Court must view all facts and inferences to be drawn therefrom in the light most favorable to the non-moving party. SEC v. Blavin, 760 F.2d 706 (6th Cir. 1985). The non-moving

party, however, may not merely rest on conclusory allegations contained in the complaint, but must respond with affirmative evidence supporting his claims and establishing the existence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Chao v. Hall Holding Co., Inc., 338 F.3d 557, 566 (6th Cir. 2003); Cloverdale Equipment Co. v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir. 1989).

Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. Id. at 248. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 288-89, 88 S.Ct. 1575, 20 L.Ed. 2d 569 (1968).

## V. CONCLUSIONS

A. Motion to Dismiss

The Court agrees that the plaintiff's refusal to answer questions at the deposition warrants sanctions under Rule 37 of the Federal Rules of Civil Procedure. The plaintiff had been specifically ordered by the Court to participate in his deposition and warned that sanctions would result if he refused to participate. The questions asked of him at his deposition about witnesses to the events

7

at issue, his criminal history, and his medical history were proper and sought relevant information. The Court's review of the plaintiff's deposition testimony indicates that he offered no legitimate reason for not fully answering these questions. Nor has he offered such a reason in his response in opposition to the motion. The plaintiff's assertion that defense counsel tried to confuse him and/or manipulate him at the deposition is not supported by the transcript of the deposition. Finally, the plaintiff's contention that he was merely uncooperative at the deposition and that this somehow is distinguishable from not answering questions is completely unpersuasive and self-serving.

Nonetheless, the Court does not find that the plaintiff's conduct warrants the sanction of dismissal of the action since the defendant was able to complete the deposition and the plaintiff, except as noted above, provided complete answers to the questions of the defendant's attorney. In the Court's view, the appropriate sanction for the plaintiff's willful conduct of refusing to answer legitimate questions regarding the identity of his witnesses is provided in Rule 37(b)(2)(A)(ii) of the Federal Rules of Civil Procedure, which permits the Court to prohibit the disobedient party from supporting or opposing designated claims or defenses or from introducing designated matters into evidence. The plaintiff should be barred from using the testimony of these witnesses during any proceeding in this action, whether it be through live testimony, the submission of an affidavit, or any other manner of presenting evidence from these two witnesses.[5]

Accordingly, the motion to dismiss should be denied to the extent that the defendant seeks the sanction of dismissal but granted to the extent that the Court imposes the lesser sanction of restricting the plaintiff's ability to present evidence from these two witnesses.

---

[5] However, the plaintiff should not be prohibited from using the testimony of Nathaniel Harney, whose name the plaintiff did disclose.

B. Motion for Summary Judgment

The affirmative defense of qualified immunity shields government officials performing discretionary functions from liability for civil damages unless their conduct violates a clearly established statutory or constitutional right of which a reasonable person in the official's position would have known. See Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); Gardenhire v. Schubert, 205 F.3d 303, 310-11 (6th Cir. 2000). The purpose of the qualified immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular conduct, and the doctrine protects all but the plainly incompetent or those who knowingly violate the law. Dorsey v. Barber, 517 F.3d 389, 394 (6th Cir. 2008).

The qualified immunity analysis involves two inquiries. The first prong involves determining whether a constitutional violation has occurred. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); Sigley v. City of Parma Heights, 437 F.3d 527, 537 (6th Cir. 2006); Jackson v. Leighton, 168 F.3d 903, 909 (6th Cir. 1999). If the Court finds that no violation has occurred, then the case must be dismissed. Saucier, 533 U.S. at 201. If the Court finds that the facts presented to the Court sufficiently show that a constitutional violation has occurred, the Court then determines whether the constitutional right was clearly established at the time of the incident in question such that a reasonable officer in the defendant's position would have known that his conduct violated that right.[6] See Saucier, 533 U.S. at 201; Champion v. Outlook Nashville, Inc.,

---

[6] In Pearson v. Callahan, __ U.S. __, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009), the United States Supreme Court clarified that rigid application of the two step qualified immunity analysis, which had been made mandatory in Saucier, was no longer the rule. While the two step process may be beneficial to apply in particular cases, courts are not required to first determine whether a constitutional right has been violated before determining whether the right alleged to have been violated was clearly established.

In the instant case, the Court finds that it is appropriate to follow the Saucier process and

9

380 F.3d 893, 900-01 (6th Cir. 2004); Feathers v. Aey, 319 F.3d 843, 848 (6th Cir. 2003); Burchett v. Kiefer, 310 F.3d 937, 942-43 (6th Cir. 2002); Risbridger v. Connelly, 275 F.3d 565, 569 (6th Cir. 2002). When a defendant raises a defense of qualified immunity, the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity. Silberstein v. City of Dayton, 440 F.3d 306, 311 (6th Cir. 2006).

The initial inquiry in the instant case is whether there are facts before the Court supporting a claim that Defendant Hunter violated the plaintiff's Eighth Amendment rights by using constitutionally excessive force against him. The Eighth Amendment prohibits the wanton and unnecessary infliction of pain upon a prison inmate. Whitley v. Albers, 475 U.S. 312, 319-20, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986); Rhodes v. Chapman, 452 U.S. 337, 346, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). Accordingly, the unjustified infliction of bodily harm upon a prisoner gives rise to a claim under 42 U.S.C. § 1983. See Caldwell v. Moore, 968 F.2d 595, 599 (6th Cir. 1992); Franklin v. Aycock, 795 F.2d 1253, 1258 (6th Cir. 1986).

However, the mere fact that a prisoner was subjected to physical contact which may have been forceful, and which may even amount to assault under common law, does not itself show a constitutional violation. See Pelfrey v. Chambers, 43 F.3d 1034, 1037 (6th Cir. 1995); Parrish v. Johnson, 800 F.2d 600, 604-05 (6th Cir. 1986). In the prison setting, a good faith use of physical force may be necessary to maintain prison security and discipline. Lockett v. Suardini, 526 F.3d 866, 875 (6th Cir. 2008); Williams v. Browman, 981 F.2d 901, 905 (6th Cir. 1992). The Supreme Court has explained that:

---

resolve the first step of the qualified immunity analysis prior to determining the clearly established prong on the analysis.

10

Case 3:08-cv-00248    Document 66    Filed 04/02/09    Page 10 of 16 PageID #: 421

> [w]here a prison security measure is undertaken to resolve a disturbance ... that indisputably poses significant risks to the safety of inmates and prison staff, we think the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

Whitley v. Albers, 475 U.S. at 320-21 (internal quotation marks omitted). In making the determination of whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm, the Supreme Court in Whitley noted that courts should consider factors such as "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted." Id. at 321. A court should also consider factors such as the extent of any threat to the safety of staff and other prisoners, "as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response." Id. See also Hudson v. McMillian, 503 U.S. 1, 7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).

In the instant case, it is undisputed that the plaintiff created a disturbance in the C-pod, was visibly agitated and angry, ignored verbal orders, cursed at correctional officers, threatened another inmate, and threw a trash can across the housing pod. He also does not deny yelling a threat to "kill all you mother fuckers" when exiting the pod[7] and he admits to purposefully knocking items off a work station once leaving the pod. This conduct justified the use of some physical force against him by correctional officers to control him and restore discipline and order. See Lockett, 526 F.3d at 875

---

[7] In his response in opposition, the plaintiff denies that he made this statement. See Docket Entry No. 50, at 3. However, his denial is not made in an affidavit. Furthermore, his deposition testimony was that he could not recall whether he made this statement, though he might have said it. See Docket Entry No. 37-2, at 38. The plaintiff cannot create a disputed factual issue by contradicting his own prior testimony.

11

(conduct of inmate who insulted and threatened officers, became very angry and upset, and bit and resisted officers provided officers with good faith basis to use force to control him, including grabbing his head and attempting to choke him, pushing his face into the wall, and bending back his fingers). A prison inmate is simply not free to create a disturbance such as the one caused by the plaintiff and expect to be met with only verbal orders or suggestions from correctional officers that the inmate change his behavior.

The Court does not find that the facts, even when viewed in the light most favorable to the plaintiff, can reasonably be viewed as supporting a finding that defendant Hunter acted maliciously and sadistically. Defendant Hunter has testified that he believed that the plaintiff, in swiping at the items on the work station desk, may have grabbed something to use as a weapon. See Affidavit of Hunter (Docket Entry No. 44), at ¶¶ 13-15. Although the facts show that the plaintiff ultimately did not grab anything from the work station and while the plaintiff disagrees with Defendant Hunter's assessment of the potential risk, the undisputed facts are that the plaintiff had been causing a disturbance, had acted in a threatening manner, and had swiped at the items on the work station. Given these facts, Defendant Hunter's belief was certainly based on specific facts and was reasonable.

Additionally, the act of tackling the plaintiff and bringing him to the ground to be handcuffed was itself a limited use of force and was not accompanied by any other use of force which evidences maliciousness. The plaintiff does not allege that he was punched, kicked, stomped, choked, hit with objects, or otherwise assaulted in any manner other than being tackled to the ground. Nor does he allege that he was subjected to force after he was handcuffed and brought under control. There is

12

no evidence that the use of force by Defendant Hunter was a gratuitous and malicious act directed at the plaintiff for no legitimate penological purpose at all.

The fact that the plaintiff's leg was broken during the incident certainly evidences the fact that Defendant Hunter acted with a strong measure of force in tackling the plaintiff, but there are no facts indicating that the injury suffered by the plaintiff was anything other than accidental. The plaintiff does not allege that Defendant Hunter stomped his leg, twisted it, or took any type of action suggesting that Defendant Hunter tackled him with the purpose of breaking the plaintiff's leg.

In his response in opposition, the plaintiff raises several arguments as to why summary judgment should be denied: if correctional officers had wanted to bring him under control they would have used force against him in C-pod; the facts show that a lunch box was the only thing knocked off the work station and that the plaintiff did not grab anything that could be used as a weapon from the work station; a factual dispute exists as to whether Defendant Hunter actually saw the plaintiff throw the trash can and how much of the disturbance in C-pod that Defendant Hunter actually heard; Defendant Hunter may have tackled him because Hunter was "mad" that the plaintiff knocked the lunch box over; and he was walking to the "quiet box" as directed and had stopped causing a disturbance at the time he was tackled. See Docket Entry No. 50.

None of these arguments in any way show that Defendant Hunter acted in violation of the Eighth Amendment. For the most part, the plaintiff's arguments are either self-serving attempts to minimize his conduct or hindsight opinions on what could have been done differently. Such arguments are wholly unpersuasive. The plaintiff's behavior in C-pod indicated that he was agitated and threatening. He continued this behavior once in the hallway by knocking items off a workstation. The fact that the plaintiff did not actually grab anything from the workstation is

13

irrelevant. At this point in the incident, Defendant Hunter had no way of knowing what direction matters would take, either with respect to further conduct by the plaintiff or with respect to the officers' ability to bring him under control. In such a situation and with a split-second decision having to be made, the prison official on the scene "does not have the luxury of hindsight and reflection." Ort v. White, 813 F.2d 318, 322 (11th Cir. 1987).

The only evidence set forth by the plaintiff which the Court finds supports his claim that Defendant Hunter acted maliciously is his own deposition testimony that Defendant Hunter said to him after tackling him, "Shut up, mother fucker, before I break your mother fucking neck." See Docket Entry No. 37-2, at 53. Defendant Hunter denies making this statement or any words to that effect. See Hunter Affidavit (Docket Entry No. 44), at ¶ 28.

Assuming for the purposes of this motion that this statement was made by Defendant Hunter, it is susceptible of being viewed as evidence of a malicious intent on the part of Defendant Hunter. However, in light of the bulk of the other evidence before the Court which supports a finding that the plaintiff's own conduct justified the use of force against him and that Defendant Hunter's acts were not constitutionally impermissible, the Court does not view this single piece of evidence as sufficient to create a genuine issue of material fact requiring that this action proceed to trial on the claim that Defendant Hunter used excessive force against him when he tackled him.

The Court also finds absolutely no evidence supporting the claim that Defendant Hunter acted in violation of the Eighth Amendment when he and another officer dragged the plaintiff out of the hallway into the holding cell where he then received medical attention. While the plaintiff believes that he should not have been dragged to another area, there is no evidence that the defendant acted wantonly or maliciously by removing the plaintiff from the hallway and placing him

14

in a holding cell where he then received medical attention. At the very best, the plaintiff asserts a claim of negligence on the part of the defendant. However, evidence of negligence will not support a claim under Section 1983. Estelle v. Gamble, 429 U.S. 97, 105-06, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Roberts v. City of Troy, 773 F.2d 720, 724 (6th Cir. 1985).

Because the plaintiff has not raised a genuine issue of material fact in support of his claim that defendant Hunter committed a violation of the Eighth Amendment, he has not defeated Defendant Hunter's assertion of qualified immunity. Saucier, 533 U.S. at 201. Summary judgment is warranted in favor of Defendant Hunter.

## R E C O M M E N D A T I O N

For the reasons set out above, the Court respectfully recommends that:

1) the second motion to dismiss of Defendant Hunter (Docket Entry No. 37) be GRANTED IN PART as outlined herein; and

2) the motion for summary judgment of Defendant Hunter (Docket Entry No. 43) be GRANTED, Defendant Michael Hunter be DISMISSED, and the action be DISMISSED WITH PREJUDICE.

The Court further RECOMMENDS that any appeal NOT be certified under 28 U.S.C. § 1915(a)(3) as taken in good faith.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of receipt of this notice and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written

15

objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

          Respectfully submitted,

          _____
          JULIET GRIFFIN
          United States Magistrate Judge